## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

| | | |
|---|---|---|
| **CHARMANE HAYMAN SELLERS, on**<br>**behalf of herself and all others**<br>**similarly situated,** | § <br> § <br> § <br> § | |
| **Plaintiff** | § <br> § | **CIVIL ACTION NO. 3:07-cv-1020-J-12TEA** |
| **v.** | § <br> § | **JURY TRIAL DEMANDED** |
| **CERTEGY CHECK SERVICES, INC.,**<br>**FIDELITY NATIONAL INFORMATION**<br>**SERVICES, INC.,**<br>**WILLIAM G. SULLIVAN and**<br>**S & S COMPUTER SERVICES, INC.,** | § <br> § <br> § <br> § <br> § <br> § | |
| **Defendants.** | § | |

## CLASS ACTION COMPLAINT AND JURY DEMAND

Plaintiff Charmane Hayman Sellers ("Plaintiff" or "Sellers"), on behalf of herself and all others similarly situated, bring this class action against Defendants Certegy Check Services, Inc., Fidelity National Information Services, Inc. (together, "Certegy"), William G. Sullivan ("Sullivan") and S & S Computer Services, Inc. ("S & S") (collectively, the "Defendants"), and respectfully shows the following:

## NATURE OF THE CASE

1.     Plaintiff brings this class action suit on behalf of herself and approximately 8.5 million other persons and entities in the United States to redress the Defendants' failure to adequately safeguard certain highly personal and sensitive checking account and credit/debit card data, including Class member's names, addresses, telephone numbers, account numbers, expiration dates (for credit/debit cards), dates of birth and transactional data (collectively, the "Confidential Information") that was stolen from Certegy and then sold by Sullivan and/or S & S

1

to data brokers and direct marketing organizations ("the Breach"). This is among the most valuable information to an identity thief, and consequently the type of information that most greatly exposes a person to harm.

2.      As a result of the Breach, the Plaintiff and the millions of Class members face significantly increased risk that their personal information and identities will be fraudulently misused and that they will suffer damages and other harm as a result, all through no fault of their own.

## **PARTIES**

3.      Plaintiff Sellers is a resident of Austin, Texas. During August 2007, Sellers received a letter from Certegy, dated July 17, 2007, notifying her that her Confidential Information had been stolen and/or compromised and/or re-sold.

4.      Defendant Certegy Check Services, Inc. is a Delaware corporation with its headquarters and principal place of business located in St. Petersburg, Florida.  Certegy Check Services, Inc. is a wholly–owned subsidiary of Defendant Fidelity National Information Services, Inc.  Certegy Check Services, Inc. provides check authorization services to financial institutions and retail merchants throughout the United States and worldwide, as well as credit/debit card-related services to the gaming industry.

5.      Defendant Fidelity National Information Services, Inc. ("Fidelity") is a Georgia corporation with its headquarters and principal place of business located in Jacksonville, Florida. Fidelity is one of the largest global providers of processing services to financial institutions, with market-leading positions in core processing, card issuing services, check risk management, mortgage processing and lender processing services in the United States and in over sixty (60) countries worldwide.

6.     Defendant William G. Sullivan is a citizen and resident of Pinellas County, Florida. Sullivan owns Defendant S & S and formerly was employed by Certegy.

7.     Defendant S&S Computer Services, Inc. is a Florida corporation with its principal place of business in Largo, Pinellas County, Florida.

## JURISDICTION AND VENUE

8.     This Court has diversity jurisdiction over this matter pursuant to 28 U.S.C. § 1332(d)(2)(A), as amended by Public Law 109.2, 119 Stat. 4 (2005), because the proposed Class exceeds 100 members, the amount in controversy exceeds the sum of $5 million (exclusive of interest and costs), and Class members are citizens of a state different than the states in which the Defendants are citizens.

9.     At all relevant times, the Defendants resided, were found, had an agent or transacted business in the State of Florida, including the Middle District of Florida (and continue to do so). A substantial part—if not all—of the Defendants' unlawful conduct giving rise to the claims of the Plaintiff and Class members occurred in the Middle District of Florida. Venue, therefore, is proper in the Middle District of Florida pursuant to 28 U.S.C. § 1391(a).

## FACTS

10.     In providing its check authorization services and credit/debit card-related services to retail merchants and the gaming industry, Certegy came into the possession, custody and control of highly confidential personal and financial information, including the Confidential Information described above, pertaining to millions of individuals and/or entities.

11.     Despite the fact that Certegy contends that its retention of such information is necessary for the company to provide its check authorization services and credit/debit card-related services, Certegy failed to properly safeguard the Confidential Information. As a result,

and as Certegy admitted in July 2007 in publicly filed documents, Sullivan, a Certegy employee, downloaded from Certegy's computers and stole the Confidential Information of Sellers and approximately 8.5 million other consumers. As described in Certegy's July 17, 2007 letter to Sellers, Sullivan stole from Certegy "certain checking account and credit/debit card data, including name, address, telephone number, account number, expiration date (for credit/debit cards), and, in some checking account cases, transactional data and date of birth." According to Certegy, Sullivan, through S & S, sold the Confidential Information to a data broker who, in turn, resold the Confidential Information to a number of direct marketing organizations and, on information and belief, possibly others.

12.    Sullivan, a Certegy senior database administrator, has owned and operated S & S since 2002. On information and belief, Certegy knew about (or, at the very least, should have known about) the nature and existence of S & S, and its ownership by Sullivan, from information available in the public domain.

13.    Certegy learned of the Breach and subsequent sale of the Confidential Information in early 2007. However, several months elapsed before Certegy, on or about July 3, 2007, revealed, for the first time, that the Breach had occurred.  Thereafter, Certegy commenced notifying approximately 2.3 million consumers whose Confidential Information Certegy believed--at that time--had been stolen and/or compromised. In August 2007 Sellers received a letter from Certegy, dated July 17, 2007, notifying her that her Confidential Information had been stolen and re-sold.

14.    On or about July 24, 2007, Fidelity revealed in a SEC filing that it had underestimated the number of affected consumers and, in fact, Confidential Information of approximately 8.5 million consumers had been stolen and re-sold. Fidelity also revealed that it

did not know the full extent of the Breach, and that additional affected consumers may be identified in the future based on its ongoing investigation.

15.     As a result of the Defendants' wrongful actions and/or inaction, Sellers and the Class members have received numerous unsolicited communications from direct marketing organizations. In addition, on information and belief, the Confidential Information of certain Class members also has been used in an unauthorized manner to, *inter alia*, open or attempt to open credit card accounts in Class members' names and access Class members' bank accounts. In any event, as a result of the Defendants' wrongful actions, Sellers and the Class members face significantly increased risk that their personal information and identities will be fraudulently misused and that they will suffer damages and other harm as a result, all through no fault of their own. Equally important, they have been robbed of the value of their Confidential Information.

## CONFIDENTIAL INFORMATION AND ITS MISUSE

16.     The effects of an unauthorized disclosure of confidential personal and financial information, such as that involved in the Certegy Breach, can be, and often are, serious and far-reaching. As noted by the President's Identity Theft Task Force, headed by the United States Department of Justice and the Federal Trade Commission, "any loss or theft of personal information is troubling and potentially devastating for the persons involved." *See* Combating Identity Theft: A strategic Plan (April 2007) at 13.

17.     The Sixth Circuit Court of Appeals similarly found in *U. S. v. Williams*, 355 F. 3d 893, 898 (6th Cir. 2003), that "[c]riminals use this information to establish credit in their name, run up debts on another person's account, or take over existing financial accounts." Moreover, possession of personal confidential information may also allow criminals to "breed" identities,

that is, to obtain other forms of identification that may further enhance their ability to misuse another's identity.

18.    A data security breach, such as the Certegy Breach, significantly raises the possibility that a person's identity will be misused by criminals. According to a survey by Harris Interactive, nearly 20% of all persons whose personal information had been reported stolen, lost or improperly disclosed experienced unauthorized credit card use, bank account issues, or other issues during the three year period preceding the survey.

19.    The potential harms from an identity theft can be serious and long-term. One study found that the average victim of an unauthorized use of wrongfully disclosed personal and confidential information spends approximately 600 hours and $1,400 repairing his or her credit once violated. *See* Identity Theft Resource Center, Facts and Statistics (Sept. 2003), available at http://www.idtheftcenter.org/facts. html. The Justice Department reported in 2006 that "[t]he average amount of money involved in any type of identity theft in which there was a loss was $1,290." *See* Baum, K., "Identity Theft, 2004," Bureau of Justice Statistics Bulletin (U. S. Dept. of Justice April 9, 2006) at 6.

20.    Victims of identity theft also often suffer harms beyond simply direct financial harm, including denial of credit or utility services, increased difficulty in securing employment or housing, and higher insurance and credit rates. In some cases, an identity theft victim may even have a criminal record develop in their name. *See* Identity Theft: The Aftermath 2004 at 15, available at www.idtheftcenter.org ("Aftermath"). Other "costs include lost wages or vacation time, diminished work performance, increased medical problems, [and] impact on family and friends." *Id*. at 13.

21.     Although many people experience losses or other issues within a few months after a breach, in many instances the problems will persist for a much longer period. Unlike the theft of tangible property, confidential personal information cannot be "retrieved" after it has fallen into another's hands. Thus, even after a victim has recovered from an incident of identity theft, he or she remains vulnerable. As one commentator put it, "with identity theft, the crime can continue, for personal information works like an "access card" that cannot be readily deactivated." Daniel J. Solove, Identity Theft, Privacy, and the Architecture of Vulnerability, 54 Hastings L. J. 1227, 1246-47 (April 2003).

22.     Further, it is often the case that a victim will not discover that his or her personal confidential information has been stolen and misused until long after an identity theft has taken place, and then only when they are denied credit or discover that their bank account has been emptied. As reported by the ITRC in its survey of identity theft victims in 2004, "[a]s in 2003, about 85% of the victims found out" that their identity had been stolen "in an adverse manner." Aftermath at 12. The ITRC also reported that for more than 50% of victims, the time between the security breach and its discovery by the victim exceeded 6 months; 8.3% made their discovery between 2 and 3 years after the fact, and for 17.7% it was 4 or more years after the breach. Id.

23.     Among the most effective ways to prevent or limit the possible harm from a security breach, such as in this case, is to institute a program of identity fraud prevention, detection, and remediation. Such a program should include--at a minimum--daily monitoring of all three major credit reporting agencies, monitoring of internet chat rooms and directories, and sifting through online public records for signs of Social Security fraud, stolen credit card account trafficking, and other types of identification theft. Such a program, which is offered by several credit monitoring services, will greatly reduce the chance of actual identity theft from occurring,

and enhance the chance of early detection in order to combat the risk of financial and other personal harm.

24.    Equally important is the fact that Sellers and the Class members have been robbed of the value of their Confidential Information. According to www.hrexpertonline.com, "[o]ver the past few years, the general public has begun to understand the intrinsic value of [Confidential Information]. The increase in fraud is a less desirable consequence of the tremendous advances in collecting and processing data to provide enhanced value."

25.    Similarly, according to www.Biosmagazine.co.uk, "[c]ustomer and personnel data have been universally regarded as basic research tools with little or no intrinsic value of their own. The growth of a substantial black market for personal information changed all this. Identity theft is the fastest growing crime worldwide, and…the value of personal information ranges from £2 to £50 a record, depending on the specific content. Like it or not, one of the primary tools of business - personal data, is now valuable, and is being targeted by modern cyber-criminals."

26.    Here, Certegy's failure to adequately protect the Confidential Information, and to timely notify Sellers and the Class members of the Breach, exposed Sellers and the Class to substantially greater risk of identity theft, and deprived them of information that would have allowed them to protect themselves from at least some of the consequences of the Defendants' wrongful actions and/or inaction. The Defendants' wrongful actions and/or inaction also robbed Sellers and the Class members of the value of their Confidential Information.

27.    As a result of the Breach, Certegy recommended that Sellers and the Class members monitor their credit reports. But despite the fact that Certegy and the other Defendants are responsible for putting Sellers and Class members in harm's way, neither Certegy nor any

other Defendant, has offered to pay for credit monitoring services, taken any other effective action to protect the victims from possible harm, and/or offered to compensate them for the value of their Confidential Information.

## SELLERS' EXPERIENCE

28.     Several months before Certegy announced the Breach, Sellers noticed that she began receiving telemarketing calls even though she previously placed her telephone number on the Federal "Do Not Call" list. She also experienced an increase in the amount of direct mail advertising and number of pre-approved credit card offers.

29.     During August 2007, Sellers received a letter from Certegy, dated July 17, 2207, in which Certegy advised her of the Breach and informed her that her Confidential Information had been stolen and sold to a data broker and a number of direct marketing companies.

30.     As a direct and proximate result of the Defendants' wrongful actions and/or inaction, Sellers—like all of the other Class members—has had her Confidential Information misappropriated, vastly increasing the possibility that she will become the victim of identity theft and suffer some or all of the consequences described above.  She also has been deprived of the value of her Confidential Information.

## CLASS ACTION ALLEGATIONS

31.     The preceding factual statements and allegations are incorporated herein by reference.

32.     Sellers brings this class action on behalf of herself and a Class consisting of all other similarly situated persons and entities in the United States who had their personal and sensitive Confidential Information stolen and/or compromised as a result of the Certegy Breach

(the "Class" or "Class members"). The Class specifically excludes the Defendants and/or their officers, directors, agents and employees.

33.    According to Certegy's disclosures in the public record, there currently are approximately 8.5 million Class members. The Class members, therefore, are so numerous that their joinder is impracticable.

34.    The Defendants' wrongful conduct affected all of the Class members in precisely the same way. The impact of (i) Certegy's failure to safeguard the Class members' Confidential Information, and (ii) Certegy's failure to immediately notify the Class members of the Breach and/or notify them as soon as practicable after discovering the Breach is uniform across the Class.

35.    Questions of law and fact common to all Class members predominate over any questions affecting only individual Class members including, without limitation:

(i)    Whether Certegy acted wrongfully by improperly monitoring, storing and/or safeguarding Sellers' and the Class members' Confidential Information?

(ii)   Whether Sullivan acted wrongfully by stealing Sellers' and the Class members' Confidential Information and then reselling it to a data broker through S & S?

(iii)  Whether Certegy failed to properly and timely notify Sellers and the Class members of the Breach as soon as practical after it was discovered?

(iv)   Whether Sellers and the Class members have been injured and, if so, the type and value of the appropriate relief?

36.    Sellers' claims are typical of the claims of all Class members because such claims arise from the Defendants' wrongful conduct as alleged above pertaining to her and other Class members' Confidential Information. Sellers has no interests antagonistic to the interests of the other Class members.

37.     Sellers will fairly and adequately represent and protect the interests of the Class members. She has retained competent counsel experienced in identity theft litigation, complex commercial litigation and class actions to represent her and the Class members.

38.     This class action also provides a fair and efficient method for adjudicating the claims of Sellers and the Class members for the following reasons:

> (i)     common questions of law and fact predominate over any question affecting any individual Class member;
>
> (ii)    the prosecution of separate actions by individual Class members would likely create a risk of inconsistent or varying adjudications with respect to individual Class members, thereby establishing incompatible standards of conduct for the Defendants and/or would allow some Class members' claims to adversely affect the ability of other Class members to protect their interests;
>
> (iii)   Sellers anticipates no difficulty in the management of this litigation as a class action;
>
> (iv)    the Class is readily definable; and
>
> (v)     prosecution of this case as a class action will eliminate the possibility of repetitious litigation while also providing redress for claims that may be too small to support the expense of individual, complex litigation.

39.     Defendants have acted or refused to act on grounds that apply generally to the Class, so that final injunctive relief is appropriate with respect to the Class as a whole.

40.     Each of the Class members' claims is subject to Florida law. All Defendants are headquartered and/or located in Florida, and upon information and belief, approximately 100,000 of the victims of the Breach reside in or are citizens of Florida. The Breach occurred in Florida. Florida, therefore, has a strong interest in protecting U.S. consumers from the Defendants' negligent and unlawful conduct. These significant contacts create a state interest sufficient to make the application of Florida law to the claims asserted by Sellers and the Class neither arbitrary nor fundamentally unfair.

41.    For these reasons, a class action is superior to other available methods for the fair and efficient adjudication of this controversy. Certification, therefore, is appropriate under Rule 23(b)(2) or (b)(3) of the FEDERAL RULES OF CIVIL PROCEDURE.

## CLAIMS FOR RELIEF/CAUSES OF ACTION

### COUNT I
### CREDIT MONITORING
### (AGAINST ALL DEFENDANTS)

42.    Plaintiff reaffirms and realleges the allegations of Paragraphs 1 through 41 and further alleges as follows:

43.    As a direct and proximate result of the Defendants' wrongful actions and/or inaction, Sellers and the Class members face a greatly enhanced risk of serious harm and damages that far exceeds the basic risk of identity theft and misuse of Confidential Information that they faced prior to such wrongful actions and/or inaction.

44.    As a direct result of this increased risk, it is reasonable and prudent to engage in monitoring and other activities, as described above, in order to protect against the adverse consequences of the disclosure of their Confidential Information, and limit and remediate such consequences once they are detected.

45.    Due to the Breach, Certegy should be ordered to establish a fund to pay for a program to detect, prevent, and remediate the misuse of Sellers' and the Class's Confidential Information.

46.    **EQUITABLE RELIEF.** The Plaintiff and Class members are entitled to equitable and injunctive relief; to wit, the creation of a fund for credit monitoring and identification theft prevention and remediation purposes including, *inter alia*, the appointment of an administrator and an advisory panel of persons qualified and knowledgeable in the field of identity theft

12

detection, prevention and remediation to oversee the fund so as to prevent any additional harm and to remedy such actual harm as has or will occur.

47.   **ACTUAL AND CONSEQUENTIAL DAMAGES.** As a direct and/or proximate result of the Defendants' wrongful actions and/or inaction, the Plaintiff and Class members have sustained (and will continue to sustain) actual damages in the form of (i) the theft of the value of their Confidential Information that was improperly stolen, sold and resold, (ii) the unauthorized disclosure and/or compromise of their Confidential Information, (iii) monetary losses for money stolen from their accounts and/or fraudulent charges made on their accounts, (iv) the value of all time expended and/or out-of-pocket expenses incurred to repair their credit and/or restore their identities including, *inter alia*, closing and re-opening checking accounts and debit/credit card accounts and making similar changes to other accounts, and/or (v) the burden and expense of credit monitoring. All of the Plaintiff's and Class members' damages were reasonably foreseeable by the Defendants.

48.   **ATTORNEYS' FEES AND EXPENSES.** The Plaintiff and Class members also are entitled to recover their reasonable and necessary attorneys' fees, litigation expenses and court costs.

**WHEREFORE**, Plaintiff Charmane Hayman Sellers, on behalf of herself and all other similarly situated Class members, respectfully requests that this Court:

(i)     certify this action as a class action pursuant to Rule 23(b)(2) and/or (b)(3) of the Federal Rules of Civil Procedure, appoint Plaintiff as the representative of the Class, and appoint Plaintiff's counsel as Class Counsel;

(ii)    enter judgment in favor of Plaintiff and the Class against the Defendants under the legal theories alleged herein;

(iii)   award equitable relief as described above, and in addition, any actual or consequential damages suffered by Plaintiff and Class members in an amount to be determined by the trier of fact;

(iv)   award attorneys' fees, expenses and costs of suit;

(v)    award pre-judgment and post-judgment interest at the maximum rate allowed by law; and

(vi)   award such other and further relief to which the Plaintiff and Class members are justly entitled.

## COUNT II
## BREACH OF FIDUCIARY DUTY
## (AGAINST ALL DEFENDANTS)

49.    Plaintiff reaffirms and realleges the allegations of Paragraphs 1 through 41 and further alleges as follows:

50.    By virtue of their possession, custody and/or control of the Plaintiff's and Class members' Confidential Information, and their duty to properly monitor and safeguard such Confidential Information, the Defendants were (and continue to be) in confidential, special and/or fiduciary relationships with the Plaintiff and Class members. As fiduciaries, the Defendants owed (and continue to owe) to the Plaintiff and Class members (i) the commitment to deal fairly and honestly, (ii) the duties of good faith and undivided loyalty, and (iii) integrity of the strictest kind. The Defendants were (and continue to be) obligated to exercise the highest degree of care in carrying out their responsibilities to Plaintiff and the Class members under such confidential, special and/or fiduciary relationships.

51.    The Defendants breached their fiduciary duties to Plaintiff and Class members by, *inter alia,* (i) improperly storing and/or safeguarding Plaintiff's and Class members' Confidential Information and/or selling it to a data broker and a number of direct marketing organizations, (ii) failing to timely notify Plaintiff and the Class members that their Confidential

Information had been stolen and sold to third parties, and (iii) failing to take adequate steps to reduce or eliminate the risk and consequences of the misuse of such Confidential Information.

52.     To the extent that any of the Defendants are fiduciaries who did not breach the duties outlined above, such Defendant is nonetheless liable because it had knowledge of the breaches of fiduciary duty committed by other fiduciaries, and did not make reasonable efforts under the circumstances to remedy such fiduciary breaches.

53.     To the extent that any of the Defendants is not a fiduciary, such Defendant is nonetheless liable because it engaged in transactions with a breaching fiduciary under circumstances in which it knew (or should have known) about such fiduciary breaches.

54.     The Defendants breached their fiduciary duties to the Plaintiff and Class members by their wrongful actions and/or inaction described above. The Defendants willfully and wantonly breached their fiduciary duties to the Plaintiff and Class members or, at the very least, committed these breaches with conscious indifference and reckless disregard of their rights and interests. The Defendants' wrongful actions constitute breach of fiduciary duty at common law.

55.     **EQUITABLE RELIEF.** The Plaintiff and Class members are entitled to equitable and injunctive relief; to wit, the creation of a fund for credit monitoring and identification theft prevention and remediation purposes including, *inter alia*, the appointment of an administrator and an advisory panel of persons qualified and knowledgeable in the field of identity theft detection, prevention and remediation to oversee the fund so as to prevent any additional harm and to remedy such actual harm as has or will occur.

56.     **ACTUAL AND CONSEQUENTIAL DAMAGES.** As a direct and/or proximate result of the Defendants' wrongful actions and/or inaction, the Plaintiff and Class members have sustained (and will continue to sustain) actual damages in the form of (i) the theft of the value of

their Confidential Information that was improperly stolen, sold and resold, (ii) the unauthorized disclosure and/or compromise of their Confidential Information, (iii) monetary losses for money stolen from their accounts and/or fraudulent charges made on their accounts, (iv) the value of all time expended and/or out-of-pocket expenses incurred to repair their credit and/or restore their identities including, *inter alia*, closing and re-opening checking accounts and debit/credit card accounts and making similar changes to other accounts, and/or (v) the burden and expense of credit monitoring. All of the Plaintiff's and Class members' damages were reasonably foreseeable by the Defendants.

57.    **ATTORNEYS' FEES AND EXPENSES.** The Plaintiff and Class members also are entitled to recover their reasonable and necessary attorneys' fees, litigation expenses and court costs.

**WHEREFORE**, Plaintiff Charmane Hayman Sellers, on behalf of herself and all other similarly situated Class members, respectfully requests that this Court:

(vii)    certify this action as a class action pursuant to Rule 23(b)(2) and/or (b)(3) of the Federal Rules of Civil Procedure, appoint Plaintiff as the representative of the Class, and appoint Plaintiff's counsel as Class Counsel;

(viii)    enter judgment in favor of Plaintiff and the Class against the Defendants under the legal theories alleged herein;

(ix)    award equitable relief as described above, and in addition, any actual or consequential damages suffered by Plaintiff and Class members in an amount to be determined by the trier of fact;

(x)    award attorneys' fees, expenses and costs of suit;

(xi)    award pre-judgment and post-judgment interest at the maximum rate allowed by law; and

(xii)    award such other and further relief to which the Plaintiff and Class members are justly entitled.

**COUNT III**
**NEGLIGENCE**
**(AGAINST CERTEGY)**

58.     Plaintiff reaffirms and realleges the allegations of Paragraphs 1 through 41 and further alleges as follows:

59.     Certegy was (and continues to be) in confidential, special and/or fiduciary relationships with the Plaintiff and Class members by virtue of being entrusted with their Confidential Information. At the very least, therefore, Certegy had a duty to safeguard such information to keep it private and secure, including a duty to comply with all applicable standards, statutes and/or regulations. Certegy also had a duty to timely inform the Plaintiff and Class members of the Breach and the fact that their Confidential Information had been stolen, compromised and/or sold and re-sold.  Upon learning of the Breach, Certegy also had a duty to take immediate action to protect the Plaintiff and Class members from the foreseeable consequences of the Breach including, without limitation, establishing a fund to pay for a program to detect and mitigate against the misuse of the Plaintiff's and Class members' Confidential Information.

60.     The Certegy Breach and the resulting actual and potential damages suffered by the Plaintiff and Class members were the direct and proximate result of Certegy's improper retention and storage of the Plaintiff's and Class members' Confidential Information, Certegy's failure to use reasonable care to implement and maintain appropriate security procedures reasonably designed to protect such information, Certegy's delay in notifying the Plaintiff and Class members about the Breach and/or Certegy's failure to take immediate and effective action to protect the Plaintiff and Class members from potential and foreseeable damage. Certegy's wrongful actions and/or inaction constitute common law negligence.

17

61.     The preceding factual statements and allegations are incorporated herein by reference.

62.     **EQUITABLE RELIEF.** The Plaintiff and Class members are entitled to equitable and injunctive relief; to wit, the creation of a fund for credit monitoring and identification theft prevention and remediation purposes including, *inter alia*, the appointment of an administrator and an advisory panel of persons qualified and knowledgeable in the field of identity theft detection, prevention and remediation to oversee the fund so as to prevent any additional harm and to remedy such actual harm as has or will occur.

63.     **ACTUAL AND CONSEQUENTIAL DAMAGES.** As a direct and/or proximate result of the Defendants' wrongful actions and/or inaction, the Plaintiff and Class members have sustained (and will continue to sustain) actual damages in the form of (i) the theft of the value of their Confidential Information that was improperly stolen, sold and resold, (ii) the unauthorized disclosure and/or compromise of their Confidential Information, (iii) monetary losses for money stolen from their accounts and/or fraudulent charges made on their accounts, (iv) the value of all time expended and/or out-of-pocket expenses incurred to repair their credit and/or restore their identities including, *inter alia*, closing and re-opening checking accounts and debit/credit card accounts and making similar changes to other accounts, and/or (v) the burden and expense of credit monitoring. All of the Plaintiff's and Class members' damages were reasonably foreseeable by the Defendants.

64.     **ATTORNEYS' FEES AND EXPENSES.** The Plaintiff and Class members also are entitled to recover their reasonable and necessary attorneys' fees, litigation expenses and court costs.

**WHEREFORE**, Plaintiff Charmane Hayman Sellers, on behalf of herself and all other similarly situated Class members, respectfully requests that this Court:

(xiii)   certify this action as a class action pursuant to Rule 23(b)(2) and/or (b)(3) of the Federal Rules of Civil Procedure, appoint Plaintiff as the representative of the Class, and appoint Plaintiff's counsel as Class Counsel;

(xiv)   enter judgment in favor of Plaintiff and the Class against the Defendants under the legal theories alleged herein;

(xv)   award equitable relief as described above, and in addition, any actual or consequential damages suffered by Plaintiff and Class members in an amount to be determined by the trier of fact;

(xvi)   award attorneys' fees, expenses and costs of suit;

(xvii)   award pre-judgment and post-judgment interest at the maximum rate allowed by law; and

(xviii)   award such other and further relief to which the Plaintiff and Class members are justly entitled.

## JURY TRIAL DEMANDED

Sellers, on behalf of herself and the Class members, respectfully demands a trial by jury on all issues so triable.

Respectfully submitted,

By: _____

James W. Prevatt, Jr., Esq.
Florida Bar No. 0352012
105 North Ohio Ave.
Live Oak, Florida 32064-2463
(386) 362-4437
(386) 364-5137 Fax
Email: jprevatt@alltel.net

Richard L. Coffman, Esq.
**THE COFFMAN LAW FIRM**
505 Orleans Street, Suite 505
Beaumont, TX 77701
(409) 833-7700
(866) 835-8250 Fax

John R. Wylie, Esq.
Charles R. Watkins, Esq.
Ronald L. Futterman
**FUTTERMAN HOWARD WATKINS WYLIE
& ASHLEY, CHTD.**
122 S. Michigan Ave., Suite 1850
Chicago, IL 60603
(312) 427-3600
(312) 427-1850 Fax

**ATTORNEYS FOR THE PLAINTIFF AND
PUTATIVE CLASS**